*106 OPINION.
Matthews :
The real question in this case is, what is the net income of the partnership consisting of Woodward, Cook & Gudeon for the taxable years before us ? Section 218 of the Revenue Act of 1926 and sections 181, 182, and 188 of the Revenue Act of 1928 provide that: “ Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity ”; that “ There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net *107 income of the partnership for the taxable year * * * ”; and that the net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual except that the so-called “ charitable contribution ” deduction shall not be allowed.
Respondent in determining the deficiencies took the position that Goulden’s estate was not a member of the partnership, since it was not liable for partnership debts and had no voice in the partnership management, and held that the full amount of the commissions received by the partnership was includable in the distributive shares of the three partners surviving. He contends that the case is governed by Willard C. Hill, 14 B. T. A. 572; affd., 38 Fed. (2d) 165; Stephen J. Hallaban, 14 B. T. A. 578; affd., in part sub nom Pope v. Commissioner, 39 Fed. (2d) 420; Benedict v. Price, 38 Fed. (2d) 309; and Arthur G. Hilmer, 27 B. T. A. 1165.
The petitioners contend that under the statute the net income of the partnership distributable to the partners is that portion of the net commissions remaining after the payment to the Goulden estate of the amount required to be paid by the partnership agreement. Conceding that upon the death of Goulden there was a technical dissolution of the partnership composed of Goulden, Woodward, Cook & Gudeon, and the immediate formation of a new partnership composed of the surviving partners, they argue that it is necessary further to consider the rights of the deceased and the rights and obligations of the petitioners; that it is clearly established that upon Goulden’s death his estate became entitled to have paid to it a portion of the commissions paid by the insurance company on renewal premiums on insurance which had been written up to the time of his death; and that if the partnership agreement had not provided for payment through the surviving partners, the estate, in an appropriate proceeding, could have required the payment direct from the Connecticut General Life Insurance Co. and the money would not have gone through the hands of the petitioners.
Petitioners refer to that paragraph of the partnership agreement which provides that, upon dissolution of the copartnership by withdrawal or death, the surviving partners shall take and retain possession of all the books, papers, etc., collect all premiums and renewal premium commissions and have entire charge of the liquidation and winding up of the partnership affairs, and contend that in the absence of paragraph 14 in the agreement they would be collecting the renewal commissions but, having collected them as liquidating partners, would be under the necessity of making prompt and periodical payment of Goulden’s share under the partnership agreement to his estate. Petitioners further contend that the only difference between the acts now being done by them in liquidating the interest *108 of the Goulden estate and what they would be doing on a strict dissolution is that they themselves are carrying on new business obtained by them since Goulden’s death; that it is clear from the testimony that the basis arrived at for liquidating a deceased partner’s interest was never contemplated by the partners to do anything other than pay a deceased partner’s estate exactly what he had earned although not received up to the time of his death; that the partners did not intend to buy anything from a deceased 'partner’s estate; and that so far as they were able to determine the agreement was working out in a practical manner in accordance with the intent.
Petitioners also contend that the facts in the cases relied on by respondent are easily distinguishable from the facts in the instant case.
We agree with the petitioners that the facts in the instant case are distinguishable from the facts in the cases cited by the respondent. The Hifoner case involved a stock brokerage business and the deceased partner owned the good will, furniture and fixtures, and seats on various stock exchanges. The partnership agreement provided that his estate was to be paid the amount of his interest in the firm, the amount of his furniture and fixtures account, the then market value of his membership and seats in exchanges and boards of trade, and in addition thereto “ annually an amount equal to 25% of the net profits of the business ” conducted by the new firm for three years from the date of death of the partner.
In each of the other three cases the business conducted by the partnerships was that of insurance brokers, but it does not appear from the facts stated in any of the cases that they were life insurance brokers or that the copartners were operating under a contract with the insurance company similar to the contract here involved. The Pope case involved fire insurance brokers, and for aught the record shows the partnerships involved in the Hill and Benedict cases may have been fire insurance brokers also. In fire insurance there is no true renewal premium, but the writing of a new policy which gives rise to a new claim of compensation. Certainly if the partners involved in these three cases had had any such rights under contracts with the insurance companies which they represented as the deceased agent of the Connecticut General Life Insurance Co. had in the instant case, such fact would have been brought out. In the Hill and Pope cases the record shows that there had been contributions of capital to the partnerships and that new members were taken in after the death of a partner and new partnership agreements were executed. In the Benedict case the partnership had assets and good will.
The instant casé cannot be decided solely by reference to the partnership agreement, but must take into consideration the agency *109 contract. Furthermore, the partnership here in question had no good will and no capital. The only asset was the agency contract under which a deceased agent’s right to renewal commissions on business written up to the time of his death passed to his estate.
The surviving partners of Goulden continued to act as general agent of the Connecticut General Life Insurance Co. under the same contract with the insurance company and under the same partnership agreement at the same place. The partnership agreement was so drawn that such could be done. On Goulden’s death there was the dissolution of the partnership composed of himself and the three petitioners and the immediate formation of the continuing partnership consisting of the petitioners, the surviving partners.
Under the contract with the insurance company, the right to commissions on renewal premiums is earned when the business is written and the first premium paid. Commissions on renewal premiums do not accrue, however, until the renewal premium is paid to the insurance company. On all business written prior to Goulden’s death, his estate and the surviving partners were jointly entitled to the commissions on renewal premiums to be paid after his death. Under the partnership agreement, in case of dissolution by death, the surviving partners were to collect the renewal premiums and renewal commissions and have entire charge of the liquidation of the partnership affairs and also had the right to continue for their own benefit the business of the partnership under the existing name. Since none of the partners of the old partnership had contributed any capital to the partnership and the partnership had no assets other than the right under the agency contract to renewal commissions and collection fees on renewal premiums, and since under this agency contract a deceased agent’s right to renewal commissions passes to his estate, the continuing partnership collected the renewal commissions on business written during Goulden’s life subject to his interest therein.
The effect of the partnership agreement on a deceased partner’s rights under the agency contract was that if the surviving partners continued the business of the partnership for their own use and benefit, they could liquidate the deceased partner’s interest in the renewal commissions collected by paying to his estate the portion of the net profits set forth in paragraph 14.
Based on actuarial tables it had been determined that a diminishing portion of the net profits of the business each year for a period of 15 years would be equivalent to a deceased partner’s share of the renewal commissions and fees on renewal premiums which would be collected during each of the 15 years. Since there is no profit in the collection fee paid after the fifteenth renewal premium, the interest of a deceased partner in renewal commissions and fees would be liquidated at the end of the fifteenth year. This method of com *110 puting a deceased partner’s interest in the renewal commissions and collection fees simplified the accounting records to be kept by the insurance company and the partnership.
The evidence is clear that the provision in paragraph 14 was adopted by the partners as a simple method of determining a deceased partner’s share of the renewal commissions received on business written during such partner’s life and that it was not intended by such provision to purchase anything from the deceased partner.
After Goulden’s death, therefore, although his estate was not a partner in the new partnership, the share of the net commissions collected by the partnership to which the estate was entitled was computed the same as if it had been a partner and all commissions belonged wholly to the partnership. The profits of the new partnership to which the surviving partners were entitled were not the total net commissions, but the total net commissions less the amount which all agreed should go to the estate of a deceased partner. The continuing partnership therefore did not receive the total commissions as partnership income. It was entitled in the first instance to receive as partnership income only the net commissions remaining after paying to Goulden’s estate the equivalent of his share of the net renewal commissions collected. James Brown, 10 B. T. A. 1036. See also La Monte & Sons v. Commissioner, 32 Fed. (2d) 220; Louis C. Rollo, 20 B. T. A. 199.
We hold that the net income of the partnership consisting of the three petitioners, which is taxable to them, is the net profits.from all commissions collected less the amount required to be paid to Goulden’s estate.
Reviewed by the Board.

Judgment will be entered under Rule 50.

Goodhich concurs in the result.